# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORPORATE SYSTEMS RESOURCES,<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY, *et al.*<br><br>    Defendants. | Civil Action No. 13-1258 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, Corporate Systems Resources, alleges in this breach of contract suit that it is owed approximately $160,000 under a subcontract with Defendant LTK Consulting Services Inc. ("Defendant LTK"), which served as the "prime" contractor for Defendant Washington Metropolitan Area Transit Authority ("Defendant WMATA").  Pending before the Court are Motions to Dismiss by both defendants under Federal Rule of Civil Procedure 12(b)(6), and by Defendant WMATA under Rule 12(b)(1).  Defs.' Mots. Dismiss, ECF Nos. 5, 7.  For the reasons set forth below, the defendants' motions are granted.

## I.    BACKGROUND

The plaintiff is a "District of Columbia Corporation" and a "Certified Disadvantage [sic] Business Enterprise."  Compl. ¶ 3, ECF No. 1-3.[1]  The claims at issue allegedly arise from work performed by the plaintiff as a subcontractor to a prime contract awarded to Defendant LTK by Defendant WMATA "to provide personnel for contract administration for WMATA's railcar engineering services project."  *Id.* ¶ 6.  The plaintiff first entered into a "Time and Materials

---

[1] All facts are taken from the complaint and assumed to be true for the purposes of a motion to dismiss.  *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Subcontract" with another subcontractor of Defendant LTK, called Unified Industries Incorporated ("UII"), on August 27, 2010 to provide contract administration services. *See* Compl. Ex. 3 (Subcontract No. 6502-2 between UII and Plaintiff dated August 27, 2010), ECF No. 1-3. The plaintiff subsequently entered into a subcontract directly with Defendant LTK on January 5, 2012 to provide the same services. Compl. Ex. 2 (Subcontractor Letter Agreement between plaintiff and Defendant LTK entered into on January 5, 2012) (the "Subcontract") at 1, ECF No. 1-3.[2]

The Subcontract incorporated by reference the Prime Contract between Defendants LTK and WMATA, and stated that the plaintiff "shall be compensated for the services provided" to Defendant LTK. *Id.* The Subcontract provided that the plaintiff's rates were "subject to review by WMATA's audit group" and "[s]hould the review result in a change to the rates" charged by the plaintiff, "the [plaintiff's] invoices will be adjusted to reflect the change." *Id.* Finally, the Subcontract stated that "[p]ayments due to [the plaintiff] . . . shall be made within ten calendar days after receipt of payment by LTK from WMATA. Any payments due to [the plaintiff] by LTK are contingent upon LTK receiving payment from WMATA." *Id.* at 2.

The plaintiff alleges that it "performed all the services required under the contracts from which [Defendant] WMATA greatly benefited" and that the plaintiff "submitted all documentation required by the contracts and invoiced for payments." Compl. ¶¶ 10–11. Nevertheless, the plaintiff alleges that Defendant "LTK and UII informed [the plaintiff] that it had not received payment from WMATA for the work performed by [the plaintiff] on the outstanding invoices." *Id*. ¶ 12. The plaintiff alleges that "[a]fter all reconciliation of payments,

---

[2] The parties do not explain why the plaintiff's contract shifted from UII to Defendant LTK in 2012, but this change is ultimately irrelevant to the instant motion. Although the complaint alleges that the plaintiff has not received full payment of invoices submitted "since July 30, 2010," Compl. ¶ 27, which includes the period when UII was the contracting party with the plaintiff, UII is not named as a defendant in this action.

accounts and credits given, the Defendants owe the amount of $158,800.76 not including

interest." *Id.* ¶ 13. Despite making a demand for payment, "the Defendants have failed and

refuses [sic] to pay [the plaintiff] for the services rendered for which payment is due and owing

to [the plaintiff]." *Id.* ¶ 14.

The plaintiff sets forth three causes of action against both defendants, namely, breach of

contract for "failing to pay [the plaintiff] for services rendered," (Count I), *id.* ¶ 17; "Quantum

Merit [sic]" because "[t]he Defendants would be unjustly enriched if they were permitted to

retain the benefits of the services rendered by [the plaintiff] without having to pay for those

services," (Count II), *id.* ¶ 22; and "Account Stated," alleging that the plaintiff "sent the

Defendants invoices for services rendered," *id.* ¶ 27, and that those invoices have not been paid,

(Count III), *id.* ¶ 29.

This matter was originally filed in D.C. Superior Court and removed to this Court by

Defendant WMATA pursuant to D.C. Code § 9-1107.10, which grants "United States district

courts . . . original jurisdiction, concurrent with the courts of Maryland and Virginia, of all

actions brought by or against the [Defendant WMATA]." *See* Not. Removal, ECF No. 1.[3] Upon

removal, both defendants timely moved to dismiss for failure to state a claim upon which relief

can be granted and, as to the quantum meruit claim against Defendant WMATA, for lack of

subject matter jurisdiction. *See* Defs.' Mots. Dismiss; Fᴇᴅ. R. Cɪᴠ. P. 12(b)(1), (b)(6). In its

opposition to Defendant WMATA's motion to dismiss, the plaintiff "concede[d] WMATA's

motion as to Counts II & III." Pl.'s Opp'n Def. WMATA's Mot. Dismiss ("Pl.'s WMATA

Opp'n") at 3, ECF No. 10. Accordingly, Counts II and III against Defendant WMATA are

---

[3] The complaint also states that the amount in dispute is more than $75,000, *see* Compl. ¶ 13 (alleging $158,800.76 due to plaintiff), and that the plaintiff is diverse from Defendant LTK, *see* Compl. 3, 5 (identifying plaintiff as domiciled in D.C. and Defendant LTK as a "foreign corporation"); *see also* Compl. Ex. 2 (showing, on face of Subcontract, that Defendant LTK is located in Pennsylvania). Thus, jurisdiction in the absence of Defendant WMATA is proper under 28 U.S.C. § 1332(a) for complete diversity.

dismissed and the Court need only evaluate the parties' arguments under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); FED. R. CIV. P. 8(a).  A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief."  *Twombly,* 550 U.S. at 555 (alteration in original).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557) (alteration in original).  The Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly,* 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly,* 550 U.S. at 556).

## III.   DISCUSSION

Due to the plaintiff's concession of Counts II and III against Defendant WMATA, the only live claim against Defendant WMATA is Count I, for breach of contract.  All three counts

remain contested against Defendant LTK. The remaining count against Defendant WMATA is examined first before turning to the claims against Defendant LTK.

### A. Defendant WMATA

Under District of Columbia law,[4] in order to show a breach of contract, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)); *Osseiran v. Int'l Fin. Corp.*, 950 F. Supp. 2d 201, 208 (D.D.C. 2013) (same). A valid contract "requires both: (1) intention of the parties to be bound; and (2) agreement as to all material terms." *Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1249 (D.C. Cir. 2007) (citing *Simon v. Circle Assocs.*, 753 A.2d 1006, 1012 (D.C. 2000)). Defendant WMATA argues that the plaintiff's breach of contract claim must be dismissed because the plaintiff "has not alleged, and cannot allege, that there was a valid contract between WMATA and [the plaintiff]." Def. WMATA's Mem. Supp. Mot. Dismiss ("Def. WMATA's Mem.") at 4, ECF No. 5-1. Defendant WMATA is correct.

The complaint makes clear that the plaintiff had no direct contract with Defendant WMATA, stating that Defendant WMATA awarded the Prime Contract to Defendant LTK and UII. Compl. ¶ 6.[5] Indeed, Defendant WMATA is named in only three other places in the Complaint: in the introductory paragraph naming the parties, *see* Compl. at 1; in a paragraph identifying Defendant WMATA as a "tri-jurisdictional government agency," *id.* ¶ 4; and in

---

[4] Federal courts apply the common law of the jurisdictions in which they sit. *See Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 424 (D.C. Cir. 1988) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). The parties have not argued that any other jurisdiction's law should apply.
[5] The complaint alleges that UII was "the prime contractor of the Contract," Compl. ¶ 7, but this allegation is inconsistent with Exhibit 3, the subcontract between the plaintiff and UII, which clearly states that the prime contract is with Defendant LTK.

Paragraph 10, where the plaintiff alleges that it "performed all the services required under the contracts from which [Defendant] WMATA greatly benefited." The plaintiff attached portions of the Prime Contract between the two defendants, the Subcontract, and the contract between the plaintiff and UII, which confirm that the plaintiff and WMATA are not both parties to any of those contracts. *See* Compl. Ex. 1 (naming only Defendant LTK and Defendant WMATA as parties to Prime Contract); *id.* Ex. 2 (naming only Defendant LTK and plaintiff as parties to Subcontract); *id.* Ex. 3 (naming only plaintiff and UII as parties to contract).[6]

The Subcontract states that Defendant WMATA "has entered into a Contract with [Defendant LTK] to provide professional Railcar Engineering Services," and that Defendant LTK "is permitted to retain subcontractors to perform a portion of the services" required by the contract. Compl. Ex. 2 at 1. This reference to Defendant WMATA does not make it a party to the Subcontract. *See id.* Rather, the Subcontract makes clear that Defendant LTK was "retain[ing] [the plaintiff] to provide services," that the plaintiff's "services will be provided at the direction of LTK's Project Manager . . . or his designated replacement," and that "[i]nvoices for such services and supporting documentation should be submitted on a monthly basis and be received by LTK on or before the first day of the following month." *Id.* The contract notes that "[p]ayments due to [the plaintiff] under this Letter Contract shall be made within ten calendar days after receipt of payment by LTK from WMATA" and that "[a]ny payments due to [the plaintiff] by LTK are contingent upon LTK receiving payment from WMATA." *Id.* at 2. It was

---

[6] The defendants have attached in their opposition papers other portions of the same contracts referenced in the complaint. The Court may review those contracts on a motion to dismiss. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (noting court may consider, on motion to dismiss, "facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice" (quoting *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006))); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) (concluding court could properly consider, on motion to dismiss, chapter of Personnel Manual and "various letters and materials produced in the course of plaintiff's discharge proceedings" attached to plaintiff's opposition that were "referred to in the complaint and [were] central to plaintiff's claims" without converting motion to summary judgment).

signed by Defendant LTK's Vice President–CFO and the plaintiff's President.  *Id.*  On its face, the Subcontract does not present any indication that Defendant WMATA intended to be bound by the Subcontract, nor that there was substantial agreement between Defendant WMATA and the plaintiff on all material terms.  *See Steven R. Perles, P.C.*, 473 F.3d at 1249.  Consequently, the plaintiff has failed to plead the existence of a valid contract between the plaintiff and Defendant WMATA.

In opposition, the plaintiff makes two arguments in an unsuccessful attempt to avoid this conclusion.[7]  First, the plaintiff contends that it was a third-party beneficiary to the Prime Contract.  Pl.'s Opp'n Def. WMATA's Mot. Dismiss ("Pl.'s WMATA Opp'n") at 7–14, ECF No. 10.  Alternatively, the plaintiff asserts that its relationship with Defendant WMATA could be construed as being in direct privity because Defendant WMATA had the ability to audit the plaintiff's invoices under the Subcontract.  Pl.'s WMATA Opp'n at 14.

At the outset, Defendant WMATA is correct that the plaintiff "failed to allege that it was a third-party beneficiary of the WMATA-LTK Contract in its Complaint."  Def. WMATA's Reply Pl.'s Opp'n Def. WMATA's Mot. Dismiss ("Def. WMATA's Reply") at 3, ECF No. 11.  Since this third-party beneficiary status argument is not pleaded in the complaint, it is not properly before the Court on a Rule 12(b)(6) motion.  *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d. 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint

---

[7] The plaintiff further argues that motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "disfavored," citing the more lenient "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Pl.'s WMATA Opp'n at 6–7.  The *Conley* "no set of facts" standard was abrogated by *Twombly*, which established the current standard for 12(b)(6) motions and made clear that dismissal of cases on such motions is not "disfavored" when the plaintiff fails to make "[f]actual allegations [specific] enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see also Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011) (noting that the Supreme Court has "abrogated the *Conley* formulation in [*Twombly*]").  Consequently, the plaintiff's reliance on pre-*Twombly* case law in support of its arguments against the defendants' motions to dismiss is misplaced.

may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000))).

In support of its position that the plaintiff qualifies as a third-party beneficiary to the Prime Contract, the plaintiff cites fifteen sections of Defendant WMATA's procurement procedures manual ("PPM") which, according to the plaintiff, were incorporated into the Prime Contract and indicate that the plaintiff "was at the least a third-party beneficiary." *See* Pl.'s WMATA Opp'n at 11–13. The cited provisions generally set out standards and policies which are applicable to contracts with WMATA and to which its prime contractors should adhere in subcontracting work. Several of these provisions refer to the prime contractor's responsibility to pay subcontractors on a "timely" basis or "no later than," or "within," ten days from the receipt of each payment from Defendant WMATA, s*ee id*. at 12 (citing PPM §§302, 305.1, 307.3), while also requiring each prime contract to provide for reduction in price due to "submission of . . . subcontractor defective cost or pricing data," *see id.* (citing PPM §1314.3).

Merely mentioning subcontractors in generally applicable polices does not establish those subcontractors as third-party beneficiaries under any contract to which the policies apply; more is required to gain the status of a third-party beneficiary to a contract. *See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008) ("Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status." (quoting *Alpine Cty., Cal. v. United States*, 417 F.3d 1366, 1368 (Fed. Cir. 2005))). Nothing in the generally applicable policies contained in the PPM indicates that Defendant WMATA had an "express or implied intention to benefit directly" all subcontractors to its contracts. Moreover, the plaintiff has failed to plead that, in the context

of the specific contract at issue, Defendant WMATA had any intention to expressly or impliedly benefit the plaintiff.

The sections cited by the plaintiff may provide some incidental benefits to subcontractors, but such a party that incidentally benefits from contractual provisions to which it is not a party is not a third-party beneficiary. *See Fort Lincoln Civic Ass'n, Inc.*, 944 A.2d at 1064–65 ("An incidental beneficiary is a person who will be benefited by performance of a promise but who is neither a promisee nor an intended beneficiary." (quoting RESTATEMENT (SECOND) OF CONTRACTS (1981) § 315)). The language relied upon by the plaintiff merely indicates that it could incidentally benefit from the Prime Contract, not that it was the intended beneficiary of that contract. *See Sealift Bulkers, Inc. v. Republic of Armenia*, No. 95-1293, 1996 WL 901091, at *4 (D.D.C. Nov. 22, 1996) ("Under general contract principles, a third party beneficiary of a contract may bring an action against the principal parties to that contract only when the parties to the contract intended to create and did create enforceable contract rights in the third party." (citing *Beckett v. Air Line Pilots Assoc.*, 995 F.2d 280, 286 (D.C. Cir. 1993)); *see also Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (holding that government contract officer must "be put on notice, by either the contract language or the attendant circumstances, of the relationship between the prime contractor and the third-party subcontractor so that an intent to benefit the third party is fairly attributable to the contracting officer" before third-party beneficiary status is conferred). To the contrary, General Provision § 42 of the Prime Contract states, in subpart (e), that "[n]othing in this provision is intended to create a contractual obligation between the [Defendant WMATA] and any subcontractor or to alter or affect traditional concepts of privity of contract between all parties." Pl.'s WMATA

Opp'n at 5 n.8  Far from showing an intent to benefit the plaintiff, the language in § 42(e)

makes clear that the parties *did not* intend to create a contractual relationship between Defendant

WMATA and any subcontractors.  The sections quoted by the plaintiff also bolster Defendant

LTK's argument that a duty to pay the plaintiff was triggered only when Defendant LTK was

paid by Defendant WMATA.  *See* Pl.'s WMATA Opp'n at 12 ("The prime contractor shall

certify . . . that payment has been or will be made to all subcontractors due payment, within ten

days after receipt of payment from [Defendant WMATA] for work by those subcontractors.")

(quoting procurement policy § 307.3); *see also* Part III.B.1, *infra*.

Even assuming, *arguendo*, that the plaintiff were a third-party beneficiary, the plaintiff

would still fail to state a valid claim for breach of contract against Defendant WMATA.  The

plaintiff relies heavily upon *Sullivan v. United States*, 54 Fed. Cl. 214, 215 ("*Sullivan I*") (Fed.

Cl. 2002), to support its contention that, as a third-party beneficiary, it has a claim against

Defendant WMATA, *see* Pl.'s WMATA Opp'n at 8–11.  Such reliance is unfounded, since

---

[8] The plaintiff relies on four cases in an attempt to show that subsection 42(e) "is ineffective regarding the fact that
the subcontractor is at the very least a third party beneficiary of this provision," namely, *Shea-S&M Ball v.
Massman-Kiewit-Early*, 606 F.2d 1245, 1248 (D.C. Cir. 1979); *Paccon, Inc. v. United States*, 399 F.2d 162, 164–66
(Ct. Cl. 1968); *L.L. Hall. Const. Co. v. United States*, 379 F.2d 559, 560–61 (Ct. Cl. 1966); and *Hoffman v. United
States*, 340 F.2d 645, 652 (Ct. Cl. 1964).  Pl.'s WMATA Opp'n at 5 n.4.  All four cases are easily distinguishable,
since the parties in all four cases were prime contractors in direct privity with the government, none of them
involved or even discussed subcontractors, and each case involved specific contractual language absent from the
instant contract.  *Shea-S&M Ball* involved two prime contractors, working on adjoining portions of tunnels for the
construction of the Washington, D.C. subway.  606 F.2d at 1247–48.  In that case, the court found that one prime
contractor was a third-party beneficiary of another prime contract, which required all adjoining contractors to take
measures to avoid sewer overflows into adjoining sections of tunnel.  *Id.* at 1247–48 & n.2 (quoting contractual
language stating "[a]ny damage, disruption or interference resulting directly or indirectly from [one contractor's]
operations shall be repaired or restored by [that] Contractor").  *Hoffman* involved a similar situation where one
prime contractor's river dam changed the environment around another prime contractor's bridge abutments,
resulting in delay to the latter's project.  340 F.2d at 648.  The *Hoffman* court found that the government agency that
was in privity to both prime contractors could have ordered the two to cooperate, but did not do so, resulting in
damage to the plaintiff.  *Id.* at 650–52.  *Paccon, Inc.* involved a prime contractor and, in that case, the contractor had
specific contractual language requiring it to coordinate its schedule with other contractors so as to avoid delays;
language that is wholly absent here.  *See Paccon, Inc.*, 399 F.2d at 164–66.  Finally, *L.L. Hall Construction Co.*
involved a breach of contract suit brought by a contractor in direct privity with the government where the
government, through its own efforts, unreasonably delayed the contractor and then sought to deny liability for
damages caused to the contractor.  *See L.L. Hall Const. Co.*, 379 F.2d at 560–61.

*Sullivan* amply illustrates why the plaintiff has failed to state an actionable claim against Defendant WMATA.

In *Sullivan I*, two private plaintiffs sued the United States for breach of contract after they were injured in a motor vehicle accident between one of the plaintiffs and a U.S. Postal Service contractor. 54 Fed. Cl. at 215. The plaintiffs claimed that the contractor did not adhere to the terms of its contract with the United States to maintain a certain amount of liability insurance, thus reducing the amount of money available to compensate them for their injuries. *See id.* The *Sullivan I* court did not, as the plaintiffs contend, find "in favor of the plaintiff under the theory that the plaintiff was a third party beneficiary." Pl.'s WMATA Opp'n at 8. On the contrary, the *Sullivan I* court declined to make such a finding at the motion to dismiss stage of the proceedings, but nonetheless permitted the case to go forward because "it is more likely than not under the facts that the [plaintiffs] would have standing to assert a claim against both [the contractor] and [the government]." *Id.* at 217 (applying Federal Circuit standard for motions to dismiss for lack of subject matter jurisdiction under Rule of the Court of Federal Claims 12(b)(1)).

Following summary judgment briefing, the trial court found in favor of the plaintiffs and the government appealed. *Sullivan v. United States*, 625 F.3d 1378, 1379 ("*Sullivan II*") (Fed. Cir. 2010). The Federal Circuit reversed the trial court's finding of government liability on the breach of contract claim and entered judgment in favor of the government. *Id.* at 1381. The *Sullivan II* court assumed, without deciding,[9] that the plaintiffs were third party beneficiaries to

---

[9] The *Sullivan II* court cast significant doubt on the idea that the citizen-plaintiffs were actually third-party beneficiaries, stating in *dicta* that "[o]rdinarily, liability insurance is purchased to protect the insured party,"—in *Sullivan II*, the contractor—"from paying potential losses from [its] own pocket." *Sullivan II*, 625 F.3d at 1380. The court went on to state that the Postal Service's procurement manual made clear that "contractors may be required to carry insurance only when necessary to protect the interest of the Postal Service." *Id.* Therefore, the *Sullivan II* court opined, the "Government's intent in requiring the carrier to carry additional liability insurance is to protect the Postal Service from potential risk to the Postal Service—not to compensate others." *Id.*

the contract between the government and the postal service contractor. *See id.* at 1380. In examining the plaintiffs' breach of contract claim against the government, the court determined that the government did not breach the contract in question, since the contractor was the one contractually required to maintain liability insurance. *See id.* at 1380–81. The *Sullivan II* court found that, at most, the Postal Service "failed to enforce a contract provision that it was entitled to enforce." *Id.* at 1381. Since the government did not breach the contract, it could not be held liable by a third-party beneficiary for any breach. *See id.*

To the extent that *Sullivan I* and *II* apply to the instant matter, as the plaintiff contends, *Sullivan II* is fatal to the plaintiff's breach of contract claim against Defendant WMATA. Similarly to the parties in *Sullivan II*, the plaintiff alleges that the defendants failed to pay the plaintiff "for services rendered." *See* Compl. ¶ 17. The plaintiff cites a portion of the Prime Contract, which "required LTK to pay [the plaintiff] within ten (10) days of receipt of payment from WMATA." Pl.'s WMATA Opp'n at 10 (citing General Provision § 42 from Prime Contract). In pleading that the plaintiff had performed under the Subcontract, Defendant LTK was to pay the plaintiff, and that it did not do so, *see* Compl. ¶¶ 10–14, the plaintiff has pleaded, just as in *Sullivan II*, that Defendant LTK breached *its* contract with Defendant WMATA. Under the procurement policies, Defendant LTK was obligated to certify that it was paying its subcontractors on time to Defendant WMATA. *See id.* If it failed to do so, Defendant LTK would be breaching its obligation to Defendant WMATA. Thus, just as in *Sullivan II*, the most that could be said here is that Defendant WMATA "failed to enforce a contract provision that it was entitled to enforce." *Sullivan II*, 625 F.3d at 1381. Declining to enforce a contract right does not constitute a breach by Defendant WMATA of any contract.[10] The plaintiff decidedly

---

[10] Another case relied upon by the plaintiff, *First Hartford Corp. Pension Plan & Trust v. United States* ("*First Hartford*"), 194 F.3d 1279, 1289 (Fed. Cir. 1999) reinforces this conclusion. In *First Hartford*, the Federal Circuit

has not pleaded that Defendant WMATA breached any aspect of the Prime Contract, let alone the terms of the Subcontract.

The plaintiff's alternative argument that it was effectively in privity with Defendant WMATA fares no better. The plaintiff asserts that because Defendant WMATA was able "to demand [the plaintiff's] financial information and the authority to issue a price adjustment," and the contract allegedly "made [the plaintiff] subject to the [PPM] requirements," Defendant WMATA "became a party to the subcontract." Pl.'s WMATA Opp'n at 14. The only case on which the plaintiff relies in support of this argument is *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed. Cir. 1983), s*ee* Pl.'s WMATA Opp'n at 14, but that case is wholly inapposite and, to the extent that it has any bearing on this case, it cuts against the plaintiff.

The *Johnson Controls, Inc.* court found that, in the context of a dispute between a subcontractor and the federal government, a subcontractor was generally *not* in privity with the government and could not bring suit for breach of contract. 713 F.2d at 1550–51. An exception to this general rule may apply only when the prime contractor acts as a government agent by "(1) acting as a *purchasing* agent for the government, (2) the agency relationship between the government and the prime contractor [is] established by clear contractual consent, and (3) the contract state[s] that the government [is] directly liable to vendors for the purchase price." *Id.* at 1551 (emphasis in original). None of those factors are pleaded in the plaintiff's complaint, nor contained in the excerpts from the Subcontract before the Court. *See generally* Compl. & Ex. 2. Moreover, in *Johnson Controls, Inc.*, the court held that even when the government agency had "sole authority to reject work"; was the "required interpreter of . . . drawings and specifications";

---

noted that, as a general rule, suits against the government may only be raised by those in privity with the government. *Id.* The exceptions to that rule require the non-party to the contract in question to stand in the shoes of an entity that is in privity with the government. *Id.* Here, the party into whose shoes the plaintiff must step is Defendant LTK, because it is the only party to this suit that was in privity with the government. *See generally*, Compl. Defendant LTK has no claim for breach of contract against Defendant WMATA. *See supra*.

made decisions, as in the instant matter, "concerning equitable adjustments for changes and suspensions of work under subcontracts"; and "decide[d] disputes under the terms of both the prime contract and subcontract," privity did not exist between the government and the subcontractor. 713 F.2d at 1548. Substantially more interaction between the agency and the subcontractor than has been pleaded here was found insufficient to establish privity in *Johnson Controls, Inc*. *See id.* Thus, the mere fact that Defendant WMATA was able to audit the plaintiff's rates and make adjustments to the invoices, *see* Compl. Ex. 2 at 1, does not establish privity between the plaintiff and Defendant WMATA.

In sum, not only has the plaintiff not pleaded that it was in privity with Defendant WMATA, but also, even assuming, *arguendo*, that the plaintiff was a third-party beneficiary to the Prime Contract, the plaintiff has not pleaded an actionable breach of contract against Defendant WMATA. Therefore, the plaintiff has failed to state a claim upon which relief can be granted as to Count I and that count must be dismissed. The nature of the plaintiff's claim against Defendant WMATA also makes any amendment of its pleading futile, since the plaintiff has explicitly alleged and argued that Defendant WMATA's prime contractor, rather than Defendant WMATA itself, engaged in a breach of contract by failing to pay the plaintiff. *See* Compl. ¶ 8, 12; Pl.'s WMATA Opp'n at 4–5 (noting contract provisions requiring Prime Contractor, not Defendant WMATA, to pay subcontractors). Since the plaintiff cannot amend its complaint such that it could survive a motion to dismiss, Count I is dismissed with prejudice. *See Metro. Life Ins. Co. v. Blyther*, No. 12-1709, 2013 WL 4579754, at *6 (D.D.C. Aug. 29, 2013) ("An amended complaint would be futile if it . . . could not withstand a motion to dismiss." (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002))).

## B.    Defendant LTK

The plaintiff asserts three claims against Defendant LTK: breach of contract (Count I); quantum meruit (Count II); and Account Stated (Count III).  The fatal deficiencies in each claim are discussed below.

### 1.    *Breach of Contract*

On its face, the complaint fails to plead a breach of the Subcontract.  Although Defendant LTK does not dispute the first two elements for a breach of contract claim—that there was a valid contract between the parties and that Defendant LTK was obliged to pay the plaintiff under that contract, s*ee generally* Def. LTK's Mem. Supp. Mot. Dismiss ("Def. LTK's Mem."), ECF No. 7-1—this defendant instead contests whether any breach of any duty owed to the plaintiff occurred, s*ee id.* at 5; Def. LTK's Reply Pl.'s Opp'n Def. LTK's Mot. Dismiss ("Def. LTK's Reply") at 7, ECF No. 13 (stating that Defendant "LTK is not arguing that there was no contract between LTK and [the plaintiff], simply that it did not breach that contract.").

The complaint alleges that the plaintiff "submitted all documentation required by the contracts and invoiced for payments," thereby asserting a claim that it performed under the contract.  Compl. ¶ 11.  The Subcontract states that "[p]ayments due to [the plaintiff] under this Letter Contract shall be made within ten calendar days *after receipt of payment by LTK from WMATA*," and that "[a]ny payments due to [the plaintiff] by LTK are contingent upon LTK receiving payment from WMATA."  Compl. Ex. 2 at 2 (emphasis added).  Despite this explicit condition for payment of the plaintiff's invoices, the plaintiff fails to plead that Defendant LTK "receiv[ed] payment from WMATA."  *See generally* Compl.; Compl. Ex. 2 at 2.  The plaintiff instead pleads that Defendant "LTK and UII informed [the plaintiff] that it [sic] had not received

payment from WMATA for the work performed by [the plaintiff] on the outstanding invoices." Compl. ¶ 12.

Citing this contractual language, Defendant LTK argues that payment from Defendant WMATA to Defendant LTK was a condition precedent to Defendant LTK's obligation to pay the plaintiff. *See* Def. LTK's Mem. at 5; Def. LTK's Reply at 3. Under D.C. law, a "condition precedent may be defined as 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'" *Wash. Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 549 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 224). "No particular form of words is necessary in order to create an express condition; however, words and phrases such as 'if' and 'provided that,' qualifying a promise, are commonly used to indicate that the duty of the promisor has expressly been made conditional." *Id.*

The plaintiff acknowledges that the Subcontract makes payment due "ten calendar days after receipt of payment by LTK from WMATA," and that "any payments due to [the plaintiff] by LTK are contingent upon" receipt of such payment. Compl. Ex. 2 at 2; *see* Pl.'s Opp'n Def. LTK's Mot. Dismiss ("Pl.'s LTK Opp'n") at 9, ECF No. 12. Nevertheless, the plaintiff contends that this clause is ambiguous because the Subcontract also states that the plaintiff "shall be compensated for the services provided as detailed on each individual task order," without further elaboration as to how the two parts of the subcontract are in conflict. *Id.* at 5, 10–11.[11]

_____

[11] The plaintiff argues that the Subcontract does not specify what type of payment Defendant LTK had to receive from Defendant WMATA in order to trigger the duty to pay the plaintiff. Pl.'s LTK Opp'n at 9. Under the plaintiff's logic, if Defendant LTK were paid any money at all by Defendant WMATA, it would have to pay the plaintiff the full amount invoiced by the plaintiff. *See id.* This argument is belied by the contract provisions the plaintiff relies upon in its opposition. Specifically, General Provision § 42 of the Prime Contract states "[t]he Contractor shall pay each subcontractor for satisfactory performance of its contract, or any billable portion thereof, no later than ten (10) days from the date of the Contractor's receipt of payment *from the Authority for work by that subcontractor*." Pl.'s LTK Opp'n at 9 (emphasis added). This provision makes plain that Defendant LTK was bound to pay the plaintiff, as a subcontractor, when paid by Defendant WMATA "for work by" the plaintiff. *See id.* Contrary to the plaintiff's argument, the contract *does* state payment is due to the subcontractor "only if payment was especially earmarked for" that subcontractor.

Apparently, the plaintiff believes the use of the word "shall" in directing payment to the plaintiff carries such force as to overcome any other condition set out for payment under the Subcontract. The plaintiff is incorrect.

The plaintiff also ignores the next two sentences after the sentence quoted by the plaintiff. These two sentences state that the plaintiff's rates "are subject to review by WMATA's audit group. Should the review result in a change to the rates, the [plaintiff's] invoices will be adjusted to reflect the change." Compl. Ex. 2 at 2. Contrary to the plaintiff's assertion, the language in the Subcontract is entirely consistent and unambiguous. When read together, the only logical reading is that the plaintiff "shall be compensated," within ten days of Defendant LTK receiving payment from Defendant WMATA, in the amount on the plaintiff's invoices, unless Defendant WMATA adjusts the plaintiff's rates with a concomitant adjustment to the plaintiff's invoices. *See* Compl. Ex. 2 at 1–2.

It is axiomatic that "[a] contract is not ambiguous simply because the parties have disputed interpretations of its terms." *Bagley v. Found. for Preservation of Historic Georgetown*, 647 A.2d 1110, 1113 (D.C. 1994). Such ambiguity is present "when, and only when . . . the provisions in controversy are[] reasonably or fairly susceptible of different constructions or interpretations . . . and [a contract] is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *Wash. Props., Inc.*, 760 A.2d at 548 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983)). Here, any ambiguity is relieved by the clear language in the contract: "any payments due to [the plaintiff] by LTK are contingent upon" receipt of such payment. Compl. Ex. 2 at 2. Although, "[a]s a general rule of contract interpretation, there is a presumption in favor of construing doubtful language in a

contract as language of promise rather than as language of condition," *Wash. Props., Inc.*, 760 A.2d at 549 (citing *N.Y. Bronze Powder Co. v. Benjamin Acquisition Co.*, 716 A.2d 230, 234 (Md. 1998)), here, there is no such doubtful language.  The Subcontract is clear that Defendant LTK was to receive payment from Defendant WMATA for the plaintiff's work before Defendant LTK was obligated to pay the plaintiff.

The plaintiff pleads that it was informed that the condition precedent to Defendant LTK's duty to pay the plaintiff—namely, payment from Defendant WMATA to Defendant LTK—did not occur.  Compl. ¶ 12.  Thus, taking all of the facts as alleged in the plaintiff's complaint as true, the obligation to pay had not yet been triggered and, consequently, the plaintiff has affirmatively pleaded that there was no breach.  In an attempt to rectify this fatal error, the plaintiff adds facts not in the record to its opposition, stating "[i]t is Plaintiff's belief that [Defendant] LTK has been paid."  Pl.'s LTK Opp'n at 8.  This assertion, and the factual basis for it, are not present in the pleading.  *See generally* Compl.  Thus, contrary to the plaintiff's assertion that "[t]he difference of the parties' positions is a fact question," *id.* at 8, the plaintiff has not set forth in the pleadings, as it must, its position that Defendant LTK was actually paid for the plaintiff's services by Defendant WMATA.  On this basis, the complaint is deficient and the breach of contract claim must be dismissed.

The reason for this pleading failure becomes clearer when the plaintiff's briefs in opposition to both defendants' motions to dismiss are read together.  In the plaintiff's opposition to Defendant WMATA's motion to dismiss, the plaintiff states that Defendant "WMATA performed a review of [the plaintiff's] pricing, rates and cost.  Thereafter, WMATA issued a rate reduction," as provided for in the contract between Defendant LTK and the plaintiff, and Defendant WMATA "reduced its payments to LTK."  Pl.'s WMATA Opp'n at 6.  The plaintiff

further alleges that Defendant "WMATA improperly adjusted down [the plaintiff's] rates and cost, to the detriment of [the plaintiff]." Pl.'s WMATA Opp'n at 13. While this allegation does not appear in the complaint, if true, this allegation bolsters the statement in the complaint that Defendant LTK informed the plaintiff "that it had not received payment from WMATA for the work performed by [the plaintiff] on the outstanding invoices." Compl. ¶ 12. Indeed, based on the plaintiff's briefing, it would appear that Defendant LTK was not paid the full amount the plaintiff feels it was owed.[12]

Based on these allegations, which were raised for the first time in the plaintiff's opposition briefing and do not appear in the complaint, it would appear that the plaintiff's actual dispute is with the results of Defendant WMATA's audit. *See* Pl.'s WMATA Opp'n at 13 ("WMATA improperly adjusted down [the plaintiff's] rates and cost, to the detriment of [the plaintiff]."); Pl.'s LTK Opp'n at 13 ("If WMATA paid LTK less than the total amount of the invoices it submitted, LTK could have challenged the reduced payment under the WMATA disputes clause."). Defendant LTK lends credence to this theory in its briefing by alleging that the plaintiff "disputed the lack of payment with WMATA and ultimately filed an appeal with the [Armed Services Board of Contract Appeals ("ASBCA")] on November 23, 2012." Def. LTK's Mem. at 4. Defendant LTK further alleges that it was only after this appeal was denied that the plaintiff filed the instant suit. *Id.*

The plaintiff, adding still more facts to the record that are not in its pleading, states that it will "be able to show that LTK failed to get Plaintiff's rates pre-approved" as required by

---

[12] It appears from the briefing that the plaintiff did receive at least some payments for the work done. *See* Compl. ¶ 13 ("After all reconciliation of payments, accounts and credits given, the Defendants owe the amount of $158,800.76."); *see also* Def. LTK's Mem. at 4 ("LTK made all payments to [the plaintiff] which were received from WMATA for [the plaintiff's] services, and [the plaintiff] received approximately $382,000 in payments for its work . . . . However, as a result of an audit by WMATA of [the plaintiff's] billing rates, WMATA did not remit to LTK the full amount [the plaintiff] invoiced, and WMATA informed [the plaintiff] of its decision.").

Defendant LTK's contract with Defendant WMATA. Pl.'s LTK Opp'n at 13. Even assuming this to be true, such a claim does not set out a breach of contract claim between the plaintiff and Defendant LTK—it hints at a breach of the Prime Contract, to which the plaintiff was not a party. *See supra* Part III.A. Thus, any additional pleading by the plaintiff would be futile, since the plaintiff's opposition makes clear that any additional facts the plaintiff could plead would merely confirm that the condition precedent to trigger Defendant LTK's duty to pay the plaintiff did not occur.[13] Accordingly, the plaintiff's breach of contract claim against Defendant LTK is dismissed with prejudice.[14]

### 2.  *Quantum Meruit*

The plaintiff's second cause of action, quantum meruit or unjust enrichment, fails since quantum meruit is only available in the absence of an express contract. The plaintiff's argument that it should be able to plead quantum meruit in the alternative is incorrect. In *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010), this court noted that when applying District of Columbia law to "causes of action [that] clearly involve promises contained in an express written contract," the plaintiff must "recover under a breach of contract theory." This is because

---

[13] Notably, in its opposition to Defendant LTK's motion to dismiss, the plaintiff admits that Defendant "LTK was the only party who had a right to challenge a declaration that rates were to be adjusted," Pl.'s LTK Opp'n at 13, and that the plaintiff "provided LTK sufficient information to challenge the reduction and request LTK to help correct the wrongful reduction," *id.* at 13 n.4. If, as the plaintiff argues in its opposition to Defendant WMATA's motion to dismiss, the plaintiff was actually in privity with Defendant WMATA, the plaintiff would have had some recourse since it was a party to the Prime Contract. The plaintiff's admission that it had no ability to challenge Defendant WMATA's rate reduction under the Prime Contract undercuts its assertion of privity with Defendant WMATA.

[14] The plaintiff also argues that "pay if paid" clauses are generally disfavored on public policy grounds, relying on authority from other states and districts. Pl.'s LTK Opp'n at 11–12. This argument is unavailing for at least two reasons. First, the plaintiff has raised a breach of contract action, not a declaration that the Subcontract is void and that the defendants owe the plaintiff regardless of the contractual terms. Second, contrary to the law from other jurisdictions, "pay if paid" contracts are enforced in this District and in Maryland, to which this District looks for guidance on issues of common law. *See Urban Masonry Corp. v. N&N Contractors, Inc.*, 676 A.2d 26, 36 (D.C. 1996) (enforcing "pay if paid" clause); *Gilbane Bldg. Co. v. Brisk Waterproofing Co., Inc.*, 585 A.2d 248, 252 (Md. Ct. Spec. App. 1991) (enforcing "pay when paid" clause); *see also Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983) (noting that Maryland is "the source of the District's common law and an especially persuasive authority when the District's common law is silent"). Thus, even if other jurisdictions disfavor "pay when paid" clauses, such clauses are not disfavored in this jurisdiction and the plaintiff has offered no case law stating otherwise.

District of Columbia law "recognizes unjust enrichment as a species of quasi contract that imposes 'in the absence of an actual contract,' 'a duty . . . upon one party to requite another in order to avoid the former's unjust enrichment[,] . . . to permit recovery by contractual remedy in cases where, in fact, there is no contract." *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 279–80 (D.C. Cir. 2009) (alterations in original and citations omitted).  Thus, "[u]nderscoring the nature of promissory estoppel and unjust enrichment as remedies for failed agreements, courts tend not to allow either action to proceed in the presence of an actual contract between the parties."  *Id*. at 280.

Here, this is no dispute that there is a valid contract between Defendant LTK and the plaintiff.  *See* Compl. ¶ 8 ("[The plaintiff] executed a subcontract under the Contract with [Defendant] LTK on or about January 5, 2012."); Def. LTK's Reply at 7 ("LTK is not arguing that there was no contract between LTK and [the plaintiff], simply that it did not breach that contract.").  Since an express contract exists between the parties, that contract provides the only remedy for breach and quantum meruit is unavailable, even if pleaded in the alternative.  *See Plesha*, 725 F. Supp. 2d at 112 (dismissing alternatively pleaded quantum meruit claim where express contract undisputedly existed).  Accordingly, Count II against Defendant LTK is dismissed with prejudice, since it is undisputed that there is an express contract between the parties, making any amended complaint futile.

### 3.   *Account Stated*

The plaintiff's cause of action for account stated also must fail.  "An account stated is 'a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due.'"  *Eagle Maint. Servs., Inc. v. D.C. Contract Appeals Bd.*, 893 A.2d 569, 582 (D.C. 2006) (quoting *Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 615 F. Supp. 426,

428–29 (S.D.N.Y. 1985)). Such a claim "presupposes an absolute acknowledgement or admission of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent, express or implied, to the correctness of the balance." *Id.* at 582–83 (quoting *Falcone v. Paradiso*, 54 F.2d 715, 717 (D.C. Cir. 1931)). The plaintiff has merely pleaded that it sent Defendant LTK "invoices for services rendered" and made repeated attempts "to collect the amount past due on the invoices." Compl. ¶¶ 27–28. Under District of Columbia law, "the mere sending of the bills . . . imported no promise of payment on the part of" the party to whom the bills were sent. *First Nat'l Realty Corp. v. Impact Advertising, Inc.*, 206 A.2d 579, 580 (D.C. 1965); *see also Chinn v. Lewin*, 16 F.2d 512, 514–15 (D.C. Cir. 1926) (finding "[t]here is no way in which" the mere "submission of a bill for professional services, over which there had been a sharp controversy as to the proper amount, followed by three written demands for payment, all within less than three months . . . can be held to constitute acquiescence on the part of the defendant, or be distorted into an account stated").

In the instant matter, the plaintiff has failed to plead that Defendant LTK agreed, either expressly or impliedly, that it owed the plaintiff a sum certain. *See* Compl. ¶¶ 25–29. On the contrary, Defendant LTK states that it "is not indebted to [the plaintiff]" under the terms of the subcontract. Def. LTK's Mem. at 6. Consequently, the pleading fails on its face since it does not plead the presence of an express or implied agreement as to the amount due, and amending the pleading would be futile since Defendant LTK does, in fact, dispute the amount due. Accordingly, Count III against Defendant LTK is dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the plaintiff has failed to plead a cause of action against either Defendant WMATA or LTK, and any amended pleading would be futile since such a pleading

would not survive a motion to dismiss.  The defendants' motions to dismiss for failure to state a claim are granted and this action is dismissed with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 25, 2014

_____

BERYL A. HOWELL
United States District Judge